UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN BAYER,

        Plaintiff,

v.                                                                           Case No. 05-C-661

TOWN OF PESHTIGO,

        Defendant.

**DECISION AND ORDER**

Plaintiff John Bayer operated a bar in Peshtigo by the name of Scooter's. After undercover agents visited the bar and witnessed nude dancing, solicitations of prostitution and drug use, the Town of Peshtigo decided in May 2005 that it would not renew Bayer's liquor license. Bayer brought this challenge to the Town's action under state and constitutional law. Bayer's federal claims are brought under 42 U.S.C. § 1983, and federal jurisdiction exists under 28 U.S.C. §§ 1343 and 1367. The case is now before me on the Town's motion for summary judgment. For the reasons given herein, the motion will be granted.

**I. Background**

Scooter's bar began offering nude dancing in early 2004, with the dancers frequently performing either totally nude or with their panties around their thighs or ankles. In August 2004, the Town passed two adult entertainment ordinances. The first, Town of Peshtigo Ordinance No. 04-03, entitled "Adult Entertainment – Nude Dancing", regulates the amount of clothing required for performers and prohibits physical contact between dancers and patrons in establishments

licensed to sell alcohol.[1] The second, Ordinance No. 04-04, entitled "Adult Entertainment Taverns – Licenses", requires such establishments that feature "adult entertainment" to obtain a license and the entertainers who perform there to register with the Town Clerk. It also imposes further limitations upon the operation of such establishments so as to minimize their impact on the surrounding community.[2] Although Bayer attended Town meetings at which the ordinances were discussed and received notice of the ordinances, he never applied for an adult entertainment tavern license. Nor did the dancers he employed register with the Town Clerk. Apparently, Bayer either thought his bar had been grandfathered in and excused from compliance with the ordinances, or he believed that the ordinances themselves were unconstitutional. (DPFOF ¶ 20; PPFOF ¶ 20.)

In the fall of 2004 the Marinette County Sheriff's Department conducted an undercover investigation on the basis of a report of illegal activity. The report came from a Town board member and former police chief Pat Ravet, who had voted earlier that summer against renewing Bayer's liquor license. As a result of the investigation, three Scooter's dancers were arrested on the

---

[1]Section 5 B. of Ordinance No. 04-03, reads as follows:

It is unlawful for any person to perform or engage in . . . any live act, demonstration, dance or exhibition . . . which:
    1. Shows his or her genitals, pubic area, vulva, anus, anal clef or cleavage with less than a fully opaque covering; or
    2. Shows any portion of the female breast below a point immediately above the top of the areola; or
    3. Shows the covered male genitals in a discernibly turgid state.

[2]For example, Ordinance No. 04-04 required that licensed establishments be operated so that no intimate parts of entertainer's body was visible from outside the tavern. Signs warning patrons of the nature of the entertainment being offered were required to be prominently displayed at the entrance. Photographs or other visual representations displaying intimate body parts were prohibited, as was the solicitation of customers within a specified distance of the premises. Ordinance No. 04-04, § 8.

grounds of drug use and prostitution. Bayer asserts that at the time he had no knowledge of any illegal activity and notes that he had a strictly-enforced policy against prostitution and drug use. For example, on one occasion, he states that he fired a dancer immediately for soliciting prostitution. (PPFOF ¶ 9-10.)

In an April 14, 2005 letter, the Town informed Bayer of its intent not to renew (the parties say "nonrenew") his liquor license. The notice informed Bayer that a hearing would take place on May 12, 2005, and gave three reasons for the non-renewal: (1) Bayer had not complied with the provisions of the Town of Peshtigo Ordinance No. 04-04 Adult Entertainment Taverns – Licenses adopted August 17, 2004; (2) Bayer had not complied with the provisions of the Town of Peshtigo Ordinance #04-03 Adult Entertainment – Nude Dancing adopted August 17, 2004; and (3) Bayer had not complied with the provisions of the Town of Peshtigo Zoning Ordinance dated December 21, 2004 Section 4(D)(5)(c)(6). (Coble Aff., Ex. 2.) According to Bayer, this was the first time he ever knew that licensing was at issue.

Soon after receiving the notice of non-renewal, Bayer applied for a renewal of his liquor license. The Town responded with a second letter, dated May 7, again informing him of the Town's intent to nonrenew his license and the upcoming hearing on the matter. In addition to the reasons for the Town's decision not to renew his license given in the previous letter, this letter informed Bayer that Town would also be relying upon "the factual allegations contained in three criminal matters now pending in the Marinette County Circuit Court which involve dancers at Scooter's and conduct which took place at Scooter's." (Coble Aff., Ex. D). The letter also repeated the previous notice that the licensee had the right to be represented by counsel and to present and examine witnesses. (*Id.*)

3

The hearing was held on May 12. Bayer appeared personally and stated he wished to proceed without representation. Law enforcement witnesses testified that as part of an investigation they went to Scooter's on four separate occasions in the Fall of 2004 in an undercover capacity. The officers observed dancers performing without any clothing covering their genitals or breasts. On occasion, patrons would touch the dancers, including their vaginal areas. At least two different dancers solicited acts of prostitution with the undercover officers. Officers also testified that they detected the odor of marijuana in the premises and that dancers admitted they were smoking marijuana in the basement area. In a subsequent search of the premises, law enforcement officers confiscated marijuana, cocaine and hydrocodone from several dancers, and one of the dancers admitted to an officer that she had smoked marijuana with Bayer himself on a number of previous occasions. Based on the layout of the place, it appeared that anyone supervising the premises would have been aware of marijuana being used there. (Coble Aff., Ex. E at 32-35, 44-45.)

Bayer cross-examined the officers and a Town official; he also called his own witness. His questions were primarily directed to whether the officers had a warrant to search the premises. In addition, he requested that the public be allowed to comment. In response, the Town Chairman told Bayer that the public would have that opportunity to comment in writing. Ultimately, the Board voted 4-0, with one abstention (Pat Ravet), to nonrenew Bayer's liquor license. It based its decision on its findings that Bayer had violated both ordinances governing "adult entertainment and that he was "keeping an 'indecent and improper house', including but not limited to solicitation of prostitution and use of illegal drugs on premises." (Coble Aff., Ex. F.)

Bayer then brought the instant lawsuit. He seeks reinstatement of his license, a declaration that the Town's ordinances are unconstitutional, an injunction enjoining their enforcement, compensatory damages, and attorneys fees.

4

**II. Analysis**

Bayer contends that the nonrenewal of his license violated his right to due process. He also asserts that the ordinances upon which the nonrenewal was based are unconstitutional under the First Amendment. In addition, he brings a challenge to the Town's zoning laws, also on First Amendment grounds. The Town has moved for summary judgment. Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24. Here, while there are certainly some facts in dispute, the parties seem to agree that there are no *material* disputes because the bulk of the plaintiff's present challenge is facial.

**A. Due Process**

First, Bayer alleges that his procedural due process rights were violated because the Town Board was biased and based its decision on public opinion rather than evidence presented at the hearing. Further, Bayer alleges he was not given an opportunity to correct the problems the Town cited. He also asserts that it was unfair for the Town Board to essentially attribute the acts of others to Bayer.

There is no dispute that a Wisconsin liquor license (once granted) is a property right, and that due process protections apply without regard to whether the license is revoked or, as in this case, nonrenewed. *See Club Misty, Inc. v. Laski,* 208 F.3d 615, 618 (7th Cir. 2000) (Illinois law);

5

*Manos v. Green Bay,* 372 F. Supp.2d 40, 49 (E. D. Wis. 1974) (Wisconsin law). At its essence, due process means that before taking a protected interest from a citizen, the government must provide notice of the action and an opportunity to be heard.

**1. Plaintiff Failed to Invoke Process Available**

Wisconsin statutory law sets forth the procedures a municipality must undertake if it decides to nonrenew a liquor license, *Williams v. City of Lake Geneva,* 643 N.W.2d 864, 868 (Wis. Ct. App. 2002), which are above and beyond the general notice and opportunity to be heard that the Due Process Clause requires. Wis. Stat. § 125.12(3) provides:

> A municipality issuing licenses under this chapter may refuse to renew a license for the causes provided in sub. (2)(ag). Prior to the time for the renewal of the license, the municipal governing body or a duly authorized committee of a city council shall notify the licensee in writing of the municipality's intention not to renew the license and provide the licensee with an opportunity for a hearing. The notice shall state the reasons for the intended action. The hearing shall be conducted as provided in sub. (2)(b) and judicial review shall be as provided in sub. (2)(d). If the hearing is held before a committee of a city council, the committee shall make a report and recommendation as provided under sub. (2)(b)3 and the city council shall follow the procedure specified under that subdivision in making its determination.

The aggrieved party may challenge the decision under certiorari review:

> The action of any municipal governing body in granting or failing to grant . . . may be reviewed by the circuit court for the county in which the application for the license was issued, upon application by any applicant, licensee or resident of the municipality. The procedure on review shall be the same as in civil action instituted in the circuit court. The person desiring review shall file pleadings, which shall be served on the municipal governing body in the manner provided in ch. 801 for service in civil actions and a copy of the pleadings shall be served on the applicant or licensee. The municipal governing body, applicant or licensee shall have 45 days to file an answer to the complaint. Following filing of the answer, the matter shall be deemed at issue and hearing may be had within 5 days, upon due notice served upon the opposing party. The hearing shall be before the court without a jury. Subpoenas for witnesses may be issued and their attendance compelled. The decision of the court shall be filed within 10 days after the hearing and a copy of the decision shall be transmitted to each of the parties. The decision shall be binding unless it is appealed to the court of appeals.

6

Case 1:05-cv-00661-WCG   Filed 09/12/06   Page 6 of 16   Document 41

Wis. Stat. § 125.12(2)(d). Thus, subsection (3) sets forth the various steps the municipality must take before nonrenewal: provide notice of intent (citing specific grounds) and a hearing. Subsection (2)(d) provides the process for review of the municipality's decision: the filing of an action in circuit court, followed by appeal in the court of appeals.

"A § 1983 action may be brought for a violation of procedural due process, but . . . [i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law . . . The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Colon v. Schneider,* 899 F.2d 660, 666 (7th Cir.1990) (citing *Zinermon v. Burch,* 494 U.S. 113 (1990)). In this case, Bayer did not seek review in the circuit court under subsection (2)(d); that is, he did not take advantage of the process the state provided for him. Accordingly, the due process violation (if any) is not "complete" because the plaintiff failed to follow the procedures the law provided him. Put another way, "a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Dusanek v. Hannon,* 677 F.2d 538, 543 (7th Cir. 1982).

This is made clear by an unpublished case from the Eleventh Circuit involving similar facts. In *Artistic Entertainment, Inc. v. City of Warner Robins,* the plaintiff challenged, on due process grounds, the city's revocation of its liquor license. 134 Fed.Appx. 306, 309, 2005 WL 1189627, *2 (11th Cir. 2005). The court found for the city, however, noting that "the state made adequate process available to Artistic to remedy any alleged deprivation of a constitutionally-protected liberty

7

or property interest. Artistic petitioned the Superior Court for a writ of certiorari seeking review of the revocation proceeding." *Id.* The state court denied the plaintiff's petition, and the state supreme court denied its petition for certiorari. The Eleventh Circuit concluded: "The state provided Artistic with means to remedy the alleged deprivations. The state court determined, however, that Artistic failed to make a showing sufficient to warrant relief. Artistic is not now entitled to a second bite at the apple." *Id.* It is thus clear that the entirety of the procedures (i.e., process) available to the plaintiff must be taken advantage of before he can claim that the process was inadequate.

This is not to say that a plaintiff in a § 1983 case is required to exhaust state remedies before seeking relief in federal court. It is well established that there is no general exhaustion requirement for § 1983 cases. *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997) ("[T]here is no general exhaustion requirement for § 1983 plaintiffs."). At the same time, the availability of the right to judicial review of the Town's decision not to renew his liquor license in state court belies Bayer's claim that the deprivation of that property interest was without due process. The Seventh Circuit described the incoherence of such a claim in *Veterans Legal Defense Fund v. Schwartz*:

> While a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist. The whole idea of a procedural due process claim is that the plaintiff is suing because the state failed to provide adequate remedies. Therefore, we do not require a plaintiff to pursue those remedies in order to challenge their adequacy, but likewise we do not allow a plaintiff to claim that she was denied due process just because she chose not to pursue remedies that were adequate. Given the availability of state remedies that have not been shown to be inadequate, plaintiffs have no procedural due process claim.

330 F.3d 937, 941 (7th Cir. 2003).

In other words, one cannot waive the procedural protections specifically afforded under state law for the action taken and then sue the town officials for depriving him of those protections. In essence, that is what Bayer has done here. He elected not to seek judicial review of the town's decision to nonrenew his license and now accuses the town of denying him the very procedural protection to which state law entitled him. The claim makes no sense. For this reason alone, summary judgment on Bayer's procedural due process claim would be appropriate.

**2. Plaintiff Received Adequate Notice and Opportunity to be Heard**

Even assuming the due process claim was actionable under these circumstances, it is clear that Bayer received more than adequate procedural protections. He was notified of the town's intent and given the specific reasons for its decision. He appeared at a hearing, cross-examined witnesses and called his own witness. The town solicited comments from the public at his request. This is all that due process requires. As another court found under similar circumstances:

> Even if the DFI sought to revoke Plaintiff's license, Indiana law provides Plaintiff with an abundance of process to challenge the revocation. Before the DFI revokes a license, Indiana law requires the agency to provide notice to the licensee, order the licensee to show cause why its license should not be revoked, and set a hearing . . . Finally, the licensee can appeal any adverse decision by the ALJ, seek judicial review of the agency's final action in state court, and, if necessary, appeal the trial court's decision to the Indiana appellate courts. *It is difficult to imagine how these provisions would not protect Plaintiff's procedural due process rights in any license revocation proceeding.*

*Payday Today, Inc. v. Indiana Dept. of Financial Institutions,* 2006 WL 148943, *10 (N. D. Ind. 2006) (italics added).

Each of Bayer's particular challenges is unpersuasive. First, he asserts that the town unfairly imposed "strict liability" on him, essentially punishing him for the actions of his patrons and/or employees. But in light of the evidence presented at the hearing, which included undercover officers' observations of the conduct of the dancers and the smell of marijuana on the premises

9

during business hours, the Town had a sufficient basis upon which to conclude that Bayer knew what was going on at his establishment. Even if it did not, one expects that "strict liability" is the most common reason that taverns are shut down in this country: a town need not allow a bar to remain open, despite repeated bouts of crime or violence, merely because the bar owner *himself* was not involved. Such a rule would allow absentee owners a free pass. Bayer cites no case law suggesting that there is a due process violation merely because the bar's owner was unaware of the illegal activity occurring at his bar.[3]

Bayer also asserts that the Town failed to give him reasonable notice to allow him to correct the problems underlying the nonrenewal. He argues that notice must be meaningful, which is true, but that means it must provide him with an opportunity to meaningfully *contest* the charges against him, not that he has a "right to cure" or to otherwise fend off the town's action. He essentially argues that he has a due process right to receive a warning before the town takes any definitive action, but once again there is no basis in the law for such a right.

He further claims that the Town denied him due process when it "deferred" its decision for five days after the May 12 hearing until its May 17 board meeting. In particular, Bayer argues that the Board allowed public comments–which were not given under oath–to play a role in the decision to nonrenew. While he admits that we do not know if any public comments were a factor in the decision, he suggests that due process would have been violated if the board allowed public opinion to trump the evidence it heard at the May 12 hearing.

---

[3]*Millennium Restaurants Group v. City of Dallas,* cited by plaintiff, is not to the contrary. 191 F. Supp.2d 802 (N. D. Tex. 2002). There, the court found that the "strict liability" aspects of the law were not reasonably related to the permissible reasons the government may regulate speech. As such, it was an issue of intermediate scrutiny rather than procedural due process.

10

Bayer has forfeited this argument, however, because the notion of public comments was *his* idea; he cannot now fault the Town Board for considering the very information that he requested it consider. He disputes that he actually requested the public comments, (*see* Pltf. Motion to Correct Record at 1-2), but it is clear that Bayer believed "the people should have their speak, too." (Coble Aff., Ex. E at 64-65.) He and the witness he called both stated their view that the public should be involved in the process. In response, the Board indicated that only the issues addressed in the hearing would be considered in the nonrenewal determination. (Coble Aff., Ex. E at 62-63.) In response to Bayer's repeated demands that the public be allowed to comment, however, the chairman relented and indicated that the Board would consider all public comments made before the May 17 decision. (*Id.* at 69.) Thus, to the extent the Board may have allowed public opinion to play a role, it was at Bayer's own behest. He cannot now claim, therefore, that the Town's doing so violated his right to due process.

Finally, he contends that the Town intended all along to shut Scooter's down and that the reason for doing so was discriminatory animus (against nude dancing) rather than any legitimate ordinance violations. He notes that the Town's letters told him that the Town "intend[ed]" not to renew his license, which in his view suggests that the outcome was predetermined. And, even though Ravet (who had earlier voted against renewing Scooter's license) abstained from the final vote, it was Ravet who initiated the investigation that ultimately led to the nonrenewal.

Even taken in the conspiratorial light most favorable to Bayer, however, all this shows is that the Town Board believed there were grounds to refuse to renew Bayer's license, which is the first step to any action whatsoever. By informing Bayer of its intent not to renew his license, the Town was simply affording him the notice Wisconsin law requires. *See* Wis. Stat. § 125.12(3). Moreover, the fact that Town thought the nude dancing featured at Bayer's bar harmful to the public

11

health and welfare does not render its action somehow illegitimate. Town boards need not be composed of sexual libertines. Totally nude dancing is not protected by the First Amendment, and governments have a right to require, within certain boundaries, dancers to be at least partially clothed. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 (1991), and *City of Erie v. Pap's A.M.,* 529 U.S. 277, 291 (2000). It is undisputed that the dancers at Scooter's went to the point of complete or virtually complete nudity, and thus even if it is true that the Town Board acted with an "animus" against nude dancing, that animus was not directed at any activity protected by the First Amendment. Accordingly, there is no evidence supporting the argument that Bayer's hearing was motivated by an impermissible desire to freeze out any protected activity. I find, in sum, that Bayer was afforded all the process that he was due concerning the Town's decision not to renew his liquor license.

**B. First Amendment**

Bayer next argues that the Town's decision not to renew his license violated his constitutional rights because the ordinances he was found to have violated are themselves unconstitutional. He challenges the Town's adult entertainment ordinances on First Amendment grounds, arguing that the ordinances regulate more activity than is permissible and fail to exclude from their operation conduct that is constitutionally protected.[4]

---

[4] The Town argues that I should hold that Bayer has forfeited his constitutional challenge to its ordinances because he failed to identify the alleged constitutional deficiencies he now asserts in his earlier response to the Town's contention interrogatories on the issue. (Reply Br. at 17-20.) The Town's contention is not without merit. Contention interrogatories are specifically authorized under the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 33, and can yield information that is useful in deciding whether and on what grounds to seek summary judgment. Moreover, by failing to disclose his position until his response to the Town's motion, Bayer precluded the Town from addressing his contentions in its brief in chief. In the proper case, forfeiture may be appropriate, but under the circumstances of this case, I conclude that it would be too drastic a remedy.

12

Bayer's challenges the Town's Ordinances are on facial overbreadth grounds. In other words, his claim is not that the ordinance is unconstitutional as applied to him in this case, but rather that it could be unconstitutionally applied to others. The Second Circuit has recently summarized such a challenge:

> Overbreadth challenges are a form of First Amendment challenge and an exception to the general rule against third-party standing. A party alleging overbreadth claims that although a statute did not violate his or her First Amendment rights, it would violate the First Amendment rights of hypothetical third parties if applied to them. All overbreadth challenges are facial challenges, because an overbreadth challenge by its nature assumes that the measure is constitutional as applied to the party before the court.

*Farrell v. Burke,* 449 F.3d 470, 498 (2d Cir. 2006) (citations omitted).

Bayer concedes that the overbreadth doctrine is "strong medicine" to be used "sparingly" and only when the overbreadth is not only "real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 615 (1973). The burden is a difficult one because the plaintiff making such a challenge is asserting the rights of *others* and must rely on injuries allegedly caused to parties not before the court. In addition, where the potentially unconstitutional reach of a challenged statute can be easily cured by a narrowing construction or by severing the overly broad language, facial invalidation is inappropriate. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503-5 (1985); *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) ("Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute."); *see also Schultz v. City of Cumberland*, 228 F.3d 831, 850 (7th Cir. 2000) ("Nonetheless, a facial overbreadth challenge fails when the regulation's plain language is readily susceptible to a narrowing construction that would make it constitutional.").

13

Wholly aside from these important limitations to the doctrine, however, it appears clear that Bayer lacks standing to assert even an overbreadth challenge to the Town's ordinances at this point. "[O]ne of the three ingredients of standing is a demonstration that the plaintiff's injury likely will be redressed by a favorable decision." *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Ill.*, 9 F.3d 1290, 1292 (7th Cir. 1993) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). That element is missing here. The Town clearly had the authority to deny Bayer's application to renew his license based solely on its findings that he was keeping an "indecent and improper house," *see* Wis. Stat. § 125.12(2)(ag), and I have already rejected Bayer's challenge to the procedure under which this finding was made. Thus, the Town's decision not to renew his license would be sustained even if Bayer is correct in his contention that the challenged ordinances are overly broad. And since the ordinances apply only to establishments licensed to sell alcohol, the loss of his license means they are no longer applicable to him. In other words, the constitutionality of the Town's ordinances makes no difference to Bayer at this point.

This is even more obviously the case with respect to the Town's zoning code, which Bayer also challenges. Bayer notes that the Town's zoning code requires any commercial establishments in which any person appears or performs in a manner depicting sexual conduct or involving nudity to locate only in the Business District at specified distances from protected uses and even then only if a conditional use permit is granted. He contends that given the breadth of the ordinance, the requirement of a conditional use permit operates as an unconstitutional prior restraint. (Pl.'s Br. In Opp. at 44-47.) But there is no indication that the zoning ordinance has ever been applied to Bayer at all. According to the town, Bayer's bar was grandfathered in when the zoning ordinances were passed. While the Board's resolution that sets forth its decision not to renew Bayer's license at least

14

lists as grounds Ordinances No. 04-03 and No. 04-04, as well as the prostitution and drug use occurring at the bar, it makes no mention of the zoning code. Given my finding that Bayer lacks standing under the facts of this case to challenge the ordinances that were at least applicable to his bar at the time of the hearing, it necessarily follows that he lacks standing to challenge the zoning code that was not. And since Bayer lacks standing to challenge the constitutionality of any of the Town's ordinances that concern "erotic entertainment", his claim for declaratory relief will be dismissed.

**C. Chapter 125**

As noted earlier, Wis. Stat. § 125.12(2)(d) provides for judicial review of nonrenewals. In relevant part, the statute provides that a town's nonrenewal:

> may be reviewed by the circuit court for the county in which the application for the license was issued, upon application by any applicant, licensee or resident of the municipality. The procedure on review shall be the same as in civil action instituted in the circuit court. The person desiring review shall file pleadings, which shall be served on the municipal governing body in the manner provided in ch. 801 for service in civil actions and a copy of the pleadings shall be served on the applicant or licensee. The municipal governing body, applicant or licensee shall have 45 days to file an answer to the complaint. Following filing of the answer, the matter shall be deemed at issue and hearing may be had within 5 days, upon due notice served upon the opposing party. The hearing shall be before the court without a jury. Subpoenas for witnesses may be issued and their attendance compelled. The decision of the court shall be filed within 10 days after the hearing and a copy of the decision shall be transmitted to each of the parties. The decision shall be binding unless it is appealed to the court of appeals.

Bayer asks this court to hear his Chapter 125 appeal as a pendant state law claim. He asserts that this is a sensible approach because his challenge is based solely on his First and Fourteenth Amendment claims.

15

The town argues that a federal court is not a proper forum for such a claim. Indeed, the statute makes it clear that Chapter 125 review is to be in the circuit court for the county in which the license was granted. In addition, the statute requires a hearing and imposes a 10-day deadline on the court's issuance of a decision. It is unclear how the state legislature could impose such requirements upon a federal court; properly viewed, Chapter 125 is not a pendent "claim," but a process. In any event, the dispute is immaterial because the plaintiff states that his only challenges to the town's action are those based on the First and Fourteenth Amendments. Above I have determined that there was no due process violation and that, in light of the fact that the Town's action was justified regardless of whether Bayer had violated the Town's ordinances, he lacks standing to challenge their constitutionality. Accordingly, even if this court could entertain a Chapter 125 challenge, it would not succeed.

**III. Conclusion**

For the reasons set forth above, the Town's motion for summary judgment is granted that the case is ordered dismissed. The motion to correct the record is denied. The clerk is directed to enter judgment in favor of the defendant Town forthwith.

**SO ORDERED** this   11th   day of September, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
